**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RICHARD LLOYD ANDERSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-414-JHP-TLW** |
| | ) | |
| **TRACY McCOLLUM,[1] Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state prisoner and appears *pro se.* Before the Court is Petitioner's petition for habeas corpus relief (Dkt. # 1). Respondent filed a response (Dkt. # 5), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. ## 5, 6, 7).  Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

### BACKGROUND

**A.    Factual Background**

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. The Oklahoma Court of Criminal Appeals (OCCA) provided an extensive summary of the facts in its published direct appeal opinion.[2] Following review of the record, trial transcripts, and

---

[1]    Tracy McCollum has succeeded Greg Williams as Warden at Oklahoma State Reformatory. Therefore, the Clerk of Court shall substitute Tracy McCollum, Warden, in place of Greg Williams, Warden, as party Respondent. See Fed. R. Civ. P. 25(d).

[2]    In its unpublished opinion following Petitioner's re-sentencing trial, the OCCA simply referred to the facts of Petitioner's crime as set forth in the first, published decision. See Dkt. # 5, Ex. 6 n.1.

other materials submitted by the parties, the Court finds the factual summary by the OCCA is

adequate and accurate. Therefore, the Court adopts the following summary as its own.

> Forty-one year-old Mark Wilkins lived with his parents, Reuben and Patricia, in their Tulsa home. Wilkins was a methamphetamine user and dealer. He also repaired pool tables and did other odd jobs. He did not drive. Wilkins called Melissa Travis on Sunday, February 23, 2003, asking for a ride so he could repair a pool table. Travis, Wilkins's friend and fellow drug dealer, lived with Anderson at Tammy Rhodes's apartment along with Ralph Colson, Rhodes's boyfriend. Travis agreed to give Wilkins a ride after Wilkins promised to give her some methamphetamine. She arrived at the house that afternoon, accompanied by the defendant, Anderson, her six-year-old daughter, and Tammy Rhodes's 11-year-old stepsister, Nancy Duff. Before Travis got there, Wilkins called his parents at the lake at approximately 11:00 a.m. and 2:30 p.m. He warned them that because it was snowing hard, the roads were bad and they should come home, and said he was waiting on a friend to give him a ride.

> Shortly before 5:00 p.m. Reuben and Patricia returned to Tulsa. The snow at the house was several inches deep, and they could see a car had been parked in their driveway. As Reuben approached the house he saw bloody footprints on the walkway from the door to the car tracks in the driveway. Reuben unlocked the door and entered, walking through the kitchen to the den. A drawer was open in the kitchen, and a recliner was overturned in the den. Beyond the recliner Reuben could see Wilkins's feet. Wilkins was lying facedown in a pool of blood. He wore only a bloody shirt, which was open in the front. Most of the shirt buttons were torn off and scattered on the floor. There was a great deal of blood on and around Wilkins's head, face, chest and forearms, but very little blood on his legs and none on the soles of his feet. Wilkins's blood-soaked hands were bound behind him with an electrical cord. Another electrical cord was wrapped tightly around his neck. That cord was connected to the electrical cord from a battery charger lying near Wilkins's left hip. The charger electrical cord was pulled taut down Wilkins's back, between his buttocks, and the cables from the battery charger were wrapped around his right thigh. The clamps lay near Wilkins's testicles. A large commemorative glass beer bottle rested on Wilkins's back, underneath the charger electrical cord. Smears and pools of blood were in front of the fireplace in the center of the room. Large blood pools, clots, smears, and spatter were near the French doors and on the carpet and objects not far from the body. Wilkins's cell phone, wallet and dark-colored duster coat were missing, along with a trash can liner and a heavy glass paperweight. In addition to sustaining severe head wounds, Wilkins's neck had abrasions, lacerations and bruising unconnected with the ligature, and his hyoid bone was fractured. The medical examiner concluded Wilkins died from blunt force trauma and strangulation.

Anderson v. State, 130 P.3d 273, 275 (Okla. Crim. App. 2006); Dkt. # 5, Ex. 3.

**B.     Procedural history**

Following an investigation of the above described events, Petitioner was tried and convicted by a jury of First Degree Murder, in Tulsa County District Court Case No. CF-2003-3372. In accordance with the jury's recommendation, the trial judge sentenced Petitioner to life imprisonment without the possibility of parole. He was represented by attorney Rick Couch at his trial.

Petitioner appealed his conviction and sentence to the OCCA. Represented by attorney Paula Alfred, he raised the following propositions of error:

Proposition I:     State DNA expert overstated scientific findings which were inaccurate, misleading, and prejudicial.

Proposition II:     The trial court erred in denying Appellant's requested sentencing instruction.

Proposition III:     The prosecutor violated the Federal and state duty to disclose exculpatory evidence.

Proposition IV:     Appellant was deprived of effective representation of counsel.

Proposition V:     The accumulation of error requires relief.

See Dkt. # 5, Ex. 1. In addressing Proposition II, the OCCA found that the jury should have been instructed as to Petitioner's ineligibility for parole until he had served at least 85% of his sentence. Anderson, 130 P.3d at 283. In a published opinion, filed February 22, 2006, the OCCA affirmed Petitioner's conviction but remanded the case to the district court for re-sentencing. Id. at 285.

At the conclusion of Petitioner's re-sentencing trial, the jury again recommended a sentence of life imprisonment without the possibility of parole. The judge pronounced judgment and sentence accordingly. See Dkt. # 5, Ex. 6 at 1. Petitioner was represented at his re-sentencing trial by the same attorney who represented him during his first trial, Rick Couch.

3

Petitioner appealed the verdict from the re-sentencing trial in OCCA Case No. F-2007-646. Represented by attorney Stuart Southerland, Petitioner raised the following propositions of error:

| | |
|---|---|
| Proposition I: | It was reversible error for the district court to permit the State to introduce aggravating evidence at Appellant's jury sentencing trial. |
| Proposition II: | Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth amendments to the United States Constitution. |

See Dkt. # 5, Ex. 4. On July 1, 2008, the OCCA entered its unpublished opinion affirming the sentence of life without parole (Dkt. # 5, Ex. 6). Petitioner did not file a request for post-conviction relief in the state courts. There is no evidence that Petitioner filed a petition for writ of certiorari at the United States Supreme Court.

On June 26, 2009, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). He identifies three (3) grounds of error, as follows:

| | |
|---|---|
| Ground 1: | The State DNA expert overstated scientific findings which were inaccurate, misleading and prejudicial. |
| Ground 2: | Appellant received ineffective assistance of counsel, 6th and 14th Amendments to the United States Constitution. |
| Ground 3: | It was reversible error for the District Court to permit the State to introduce aggravating evidence at Appellant's jury sentencing procedure. |

(Dkt. # 1). In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) on grounds 1 and 2, and that ground 3 is not subject to federal habeas corpus review. See Dkt. # 5.

4

*ANALYSIS*

**A.    Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.    Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, they shall be reviewed pursuant to § 2254(d).

### 1. DNA evidence (ground 1)

In his first ground, Petitioner claims that Valerie Fuller, PhD., the State's DNA expert, made flawed statements as a matter of science and law during her testimony. He claims her "overstated scientific findings" were inaccurate, misleading and prejudicial. Dkt. # 1 at 5. This claim was raised in Petitioner's first direct appeal and rejected by the OCCA as follows:

> Dr. Fuller's testimony neither went beyond the bounds of scientific testimony, presumed that Anderson was guilty, nor proved that Anderson committed the crime. Any conclusion jurors may have made that Anderson was at the crime scene did not, as he suggests, arise from Dr. Fuller's claim that her methodology favored the defense. It arose from the fact that his DNA could not be excluded from a DNA mixture found on a cord binding Wilkins's wrists. The prosecutor did not use this information improperly in arguing that the DNA evidence connected Anderson to the crime, and corroborated Travis's testimony; nor was it error to remind jurors that Dr. Fuller's methodology was conservative and erred on the side of the defense. This proposition is denied.

Anderson, 130 P.3d at 27; Dkt. # 5, Ex. 3 at 7 (footnotes omitted). Respondent contends that the issue of admissibility of evidence is purely a matter of state law and is not proper for habeas corpus review. Nonetheless, Respondent argues that the OCCA's ruling was not an unreasonable application of Supreme Court law, nor was it an unreasonable determination of the facts, and that Petitioner's trial was not rendered fundamentally unfair by the testimonial evidence presented by the DNA expert. See Dkt. # 5.

"[E]rrors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law." Martin v. Kaiser, 907

6

F.2d 931, 934 (10th Cir. 1990). In a due process challenge to the admission of evidence, a petitioner is not entitled to relief unless he can demonstrate that the evidence introduced is "so unduly prejudicial that it renders the trial fundamentally unfair." <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991).

In this case, Petitioner has failed to demonstrate how the testimonial DNA evidence given by Dr. Fuller rendered his trial fundamentally unfair. Dr. Fuller testified that Petitioner could not be excluded as the supplier of DNA evidence collected from a cigarette butt found at the crime scene (Dkt. # 7-7,Tr. Trans. Vol. VI at 1028), and a wire found wrapped around the victim's wrists (<u>id.</u> at 1033). In addition to the DNA evidence, the jury was provided other evidence sufficient to find Petitioner guilty beyond a reasonable doubt. Melissa Travis was with Petitioner at the victim's house and testified that she observed Petitioner hit the victim in the head with a heavy glass paperweight (Dkt. # 7-5, Tr. Trans Vol. IV at 708, 710). She went out to the car, but upon returning to the house, saw the victim lying on the floor while Petitioner sat on him and repeatedly hit him on the head with the paperweight (<u>id.</u> at 710-11). She further testified that when she gasped at what she saw, Petitioner "jumped up and put his foot in Mark's throat and he said, 'I'm gonna kill the motherfucker.'" <u>See id.</u> at 712. A neighbor, Nathan Brown, was shoveling snow from his driveway across the street on the day of the crime. He testified as to the activity he observed and his testimony corroborated Ms. Travis's testimony about who was at the victim's house (Dkt. # 7-4, Tr. Trans. Vol. III at 506-29). Considering the evidence presented by these and other witnesses, the Court concludes that the admission of Dr. Fuller's DNA testimony did not render Petitioner's trial fundamentally unfair.

Petitioner has not shown how the OCCA's denial of relief on his ground one claim was contrary to, or an unreasonable application of, Supreme Court law. Accordingly, Petitioner's request for relief on his claim of improper testimonial evidence provided by Dr. Fuller shall be denied.

**2.  Ineffective assistance of counsel (ground 2)**

Petitioner next claims that his trial counsel at his re-sentencing trial was constitutionally ineffective for: (1) failing to present the testimony of co-defendant Melissa Travis; (2) failing to present the testimony of Cory Scuggins; and (3) failing to present the testimony of Deana Bates for the purpose of impeaching Melissa Travis' testimony. See Dkt. # 1 at 6. This claim was raised in Petitioner's direct appeal of his re-sentencing verdict (Dkt. # 5, Ex. 4 at 7-20). Petitioner readily acknowledged that his guilt was not an issue in the re-sentencing proceeding.  Id. However, he argued that it was possible that the testimony of the three identified witnesses could have served to reduce his culpability, thereby warranting modification of his sentence to life with the possibility of parole. Id.  The OCCA denied relief on this claim, citing Strickland v. Washington, 466 U.S. 668 (1984), and finding that Petitioner "has not shown that counsel's failure to utilize evidence was an error so serious that Counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Nor has he shown how pursuit of the strategy conceived by appellate counsel after the fact creates any reasonable probability of a different outcome at trial." Id. at 6, 7.

To be entitled to habeas corpus relief on this claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by

showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

In Petitioner's case, the OCCA determined that he failed to satisfy the requirements of either Strickland prong (Dkt. # 5, Ex. 6 at 7). In his habeas petition, Petitioner fails to present any argument or authority to convince the Court that the OCCA's decision was an unreasonable application of Strickland. Petitioner presents nothing to suggest that the result of his re-sentencing proceeding would have been different had his attorney called Melissa Travis, Corey Scuggins, or

9

Deana Bates to testify as witnesses for Petitioner.  Having failed to satisfy his burden under AEDPA, the Court finds that Petitioner is not entitled to relief on his ground two claims of ineffective assistance of counsel.

### 3.  Claim challenging testimony at re-sentencing not cognizable (ground 3)

In ground three, Petitioner complains that the trial court erred in allowing "aggravating evidence" at his re-sentencing trial. See Dkt. # 1. In his brief on appeal (Dkt. # 5, Ex. 4), Petitioner asserted that the graphic testimony provided by the victim's father, Reuben Wilkins, was improper victim impact evidence and was presented in violation of Oklahoma law. The OCCA cited Okla. Stat. tit. 22, § 929(C)(1), and rejected Petitioner's claim, as follows:

> Reviewing the District Court's admission of testimony according to the re-sentencing guidelines, we find no abuse of discretion. Evidence of the discovery of this crime by the deceased's father, while doubtlessly evoking pity and involving some expression of emotion, shows when, where, how, and to whom this offense occurred.  The remaining evidence identified in Appellant's brief is also well within the statutory parameters of re-sentencing set forth in section 929, and most, if not all, of this evidence was admitted at the previous trial.  There is no error in the District Court's admission of this evidence.

(Dkt. # 5, Ex. 6 at 4).  Respondent contends that the claim raises no federal constitutional issue and is not cognizable in this habeas corpus proceeding. The Court agrees.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68; 28 U.S.C. § 2241.

Petitioner's claim that testimonial evidence presented in his second stage proceedings was a violation of Oklahoma law concerning victim impact evidence is based solely on interpretation and

application of Oklahoma law.  Therefore, that claim is not cognizable on federal habeas corpus review.  Because Petitioner's claim raised in ground three is not cognizable in this federal habeas corpus proceeding, it shall be denied on that basis.

### C.  Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  <u>See</u> <u>Dockins</u>, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A separate judgment shall be entered in this matter.

3.      A certificate of appealability is **denied**.

4.      The Court Clerk shall substitute Tracy McCollum, Warden, in place of Greg Williams, Warden, as the party Respondent in this matter.

DATED this 30th day of <u>November</u>, 2012.

James H. Payne
United States District Judge
Northern District of Oklahoma